**This order is SIGNED.**

**Dated: January 10, 2020**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| Black Iron, LLC, | Bankruptcy No. 17-24816 |
| Debtor(s) | Chapter 11 |
| Wells Fargo Rail Corporation and Helm-Pacific Leasing, | |
| Plaintiffs, | Adversary Proceeding Number: 17-2094 |
| vs. | Honorable William T. Thurman |
| Black Iron, LLC; CML Metals Corporation; PIC Railroad, INC., and Gilbert Development Corporation, | |
| Defendants. | |

### MEMORANDUM DECISION ON BLACK IRON, LLC'S MOTION UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 7052, 9023 & 9024 AND WELLS FARGO RAIL CORPORATION'S MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN MEMORANDUM DECISION AND TO AMEND THE JUDGMENT

This matter came before the Court by way of Black Irons, LLC's (herewithin "Black Iron") Motion Under Federal Rules of Bankruptcy Procedure 7052, 9023 & 9024, ("Black Iron's Motion") and Wells Fargo Rail Corporation's (herewithin "Wells Fargo") Motion to Alter or

1

Amend Findings of Fact and Conclusions of Law in Memorandum Decision and to Amend the Judgment ("Wells Fargo's Motion"). The Court conducted oral argument on the matter, the Honorable William T. Thurman, presiding. Ellen Ostrow and David Jordan appeared on behalf of Black Iron, Troy Arambura and Bret Evans appeared on behalf of Wells Fargo, and Brian Rothschild appeared on behalf of Michael Conboy. The Court reviewed the relevant pleadings and heard argument thereto and incorporates its findings of fact and conclusions of law in this memorandum.

**Venue and Jurisdiction**

The jurisdiction of the Court is properly invoked under 28 U.S.C. §§ 157(b) and 1334. Wells Fargo's claims against Black Iron are core proceedings pursuant to 28 U.S.C. § 157 (b), and Wells Fargo's remaining claims are proceedings that may be heard and determined by this Court pursuant to 28 U.S.C. § 157(c). The parties had filed multiple lawsuits in state court and district court. On Aug. 21, 2017, Judge Jill Parrish of the United States District Court for the District of Utah (the "District Court") referred such claims to this Court and the parties have consented to the jurisdiction of the Court to determine the claims and defenses asserted in the above-captioned adversary proceeding. This referral included all contract claims and state law claims in the previously-filed lawsuits. Accordingly, this Court sits as a trial court as if tried in the state court or in the District Court. Indeed, this Court must follow the substantive law of the state of Utah in providing for relief in this matter. However, since it is here in this Court, certain bankruptcy rules apply which the court will address hereafter. The jurisdiction of this Court is not disputed and is hereby determined to be present.

Venue is determined by the Court to be proper pursuant to the provisions of 28 U.S.C. § 1409. Venue is laid in the United States Bankruptcy Court for the District of Utah. Notice of the hearing on these motions is determined to be adequate.

## Background

This matter comes before the Court by way of two separate motions pursuant to Rule 59 of the Federal Rules of Civil Procedure which has been adopted as Rule 9023 of the Bankruptcy Rules to alter or amend the Court's findings of fact and conclusions of law. Black Iron and Wells Fargo filed oppositions to each other's motions, and Michael Conboy filed a partial joinder to the opposition of Wells Fargo's Motion only to the extent of the issue of the lien on Black Iron's property. The parties have also filed appeals or intend to file an appeal depending on the outcome of these motions with the District Court. The motions can best be summarized as follows: Black Iron believes the judgment against it should be reduced by offsetting certain cost savings; Wells Fargo believes it is entitled to an attachment lien against Black Iron's property which the Court did not allow, that it is entitled to an award of pre-judgment interest and that it should be awarded its attorneys fees.

The Court believes it is appropriate to provide a brief synopsis of the facts which will put its ruling into perspective. Beginning in June 2010, Helm Financial Corporation, Wells Fargo's predecessor-in-interest, and Helm-Pacific entered into four lease agreements with CML Metals Corporation (herewithin "CML Metals") and CML Rail Road for the use of 540 railcars and 4 locomotives. CML Metals used the railcars and locomotives on a mine which it owned near Cedar City, Utah. CML Metals ceased mining operations in October 2014; however, it began looking for a buyer of the mine prior to shutting down its operations. CML Metals would eventually find a purchaser, Gilbert Development Company (herewithin "GDC"), and entered into an asset purchase

agreement that was finalized on April 2, 2015. Shortly before the closing on the sale, GDC assigned most of its interest in the asset purchase agreement to a newly formed entity, Black Iron.

Prior to the mine closing, CML Metals ceased making payments required under the four leases. CML Metals negotiated a deferment agreement in order to make the mine more marketable for potential buyers.  The railcars and locomotives remained on the property transferred from CML Metals to GDC then to Black Iron. After the sale, Wells Fargo made efforts to retrieve the railcars and locomotives; however, it was unsuccessful in its efforts. Three years later, after petitioning this Court for a writ of replevin, Wells Fargo was able to sell the railcars and locomotives to a third party.

In the present suit, Wells Fargo claimed the following: first, that CML Metals owed damages for failing to make payments under the lease agreements, and for other amounts owed to Wells Fargo under the leases. Second, that the transfer in which CML Metals transferred substantially all of its assets to GDC, and thence to Black Iron, was a transfer that is voidable under the Uniform Fraudulent Transfer Act ("UFTA"), Utah Code Ann. § 25-6- 1 et seq. Third, that Black Iron converted the railcars and locomotives when it prevented Wells Fargo from retrieving them. There were some other issues addressed, which are the subject of the current motions.  The Court found on summary judgment that Black Iron converted the railcars and locomotives [Memorandum Decision/Opinion and Order, Docket. No. 441] and reserved determination of damages for trial. Black Iron asserted claims and damages against Wells Fargo for storage fees and trespass. The Court dismissed those claims on summary judgment [Memorandum Decision/Opinion and Order, Docket. No. 80, Case No. 17-2088].

On June 24, 2019 to July 2, 2019, this Court conducted a trial among Wells Fargo, Black Iron, and GDC. At the conclusion of trial, the Court directed the parties to submit post-trial briefs

and took the matter under advisement. On August 30, 2019, the Court issued its decision by way

of a memorandum decision ("Memorandum Decision"). Memorandum Decision After Trial,

Docket No. 591. The Court awarded Wells Fargo's under its UFTA claim the sum of

$2,618,680.44 against both GDC and Black Iron. *See* Docket No. 592. Additionally, the Court

awarded Wells Fargo conversion damages against Black Iron in the amount of $7,885,584. *Id.*

Black Iron's Motion originally sought to reduce the conversion damages against it from

$7,885, 584 to $4,270,648. Black Iron believes the basis for this reduction lies on the theory that

any claim of Wells Fargo should be offset for certain cost savings. The cost savings are argued to

be for not having to remove and store the railcars and locomotives after the conversion date. Black

Iron bases the amount of the reduction on testimony from Wells Fargo's expert, Pat Mazzanti,

regarding the value of the equipment and Defendant's Exhibit 425, which is a chain of internal

emails regarding storage and removal costs. The value of the equipment as of August 2015 was

$11.5 million and the Court reduced this by the sale proceeds of $3,614,416. Black Iron believes

that the Court should further reduce this by the hypothetical costs of removal ($1,659,776), the

inbound switch to storage costs ($81,000), and storage costs ($1,874,160). Black Iron withdrew

its claim for a reduction of storage costs at oral argument, reducing the amount which it seeks to

reduce the conversion damages from $3,614,936 to $1,740,776 – which would reduce the total

conversion damages to $6,144,808.

Wells Fargo's Motion seeks to amend the finding of facts and corresponding judgment as

to three separate issues. First, Wells Fargo believes that the Court errored when it declined to grant

Wells Fargo an attachment on any of the assets CML Metals transferred to Black Iron. In the

Court's Memorandum Decision, it reasoned that such a remedy was unavailable because Wells

Fargo failed to seek relief from the automatic stay. Wells Fargo argues that relief from the stay is

necessary only when a creditor pursues collection remedies outside of the Bankruptcy Court. Here, Wells Fargo argues that it pursued an attachment remedy inside the Bankruptcy Court through this adversary proceeding. Because it sought the lien or attachment within the Bankruptcy Court, seeking relief from the automatic stay would have been superfluous so it argues; had Wells Fargo sought relief from the stay, it would have ended up doing exactly what it did here – obtain its remedies against Black Iron in this adversary proceeding.

Next, Wells Fargo believes the Court should alter the final judgment to include pre-judgment interest as to the conversion damages. Wells Fargo argues that the Court was mistaken in its ruling that Wells Fargo "did not request prejudgment interest" on its conversion claim. *See* Memorandum Decision, Docket No. 591, Page 48. It further argues that prejudgment interest is compulsory component of conversion damages, *see Henderson v. For-Shor Co.*, 757 P.2d 465, 468 (Utah Ct. App. 1988), and it is part of the relief that Wells Fargo has been seeking since the initiation of this adversary proceedings.

Finally, Wells Fargo believes that the Court was incorrect in its finding that Wells Fargo abandoned its claim to attorneys' fees by not filing a motion for attorneys' fees immediately following entry of the Stipulated Judgment against CML Metals, by pleading the issue of attorneys' fees in the Final Pretrial Order, or by presenting evidence at trial. Wells Fargo argues that under case law, Federal Rule of Civil Procedure 54(d) precludes it from seeking attorneys' fees against CML Metals until after entry of a final judgment resolving the entire adversary proceeding. Further, in the Complaint, Wells Fargo alleged that it sought attorneys' fees against CML Metals, and failure to reference attorneys' fees in the pretrial order does not constitute wavier. While not explicitly stated in its' Court papers, at oral argument Wells Fargo argued that under *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1264 (Utah Ct. App. 1996) it could purse

attorneys' fees against Black Iron and GDC for those fees that related to Wells Fargo pursing a contractual remedy under the leases between it and CML Metals.

**Legal Standard**

The procedural rules applicable to bankruptcy cases do not provide for "reconsideration" motions, so such a motion is generally treated as either a motion to alter or amend under Fed. R. Civ. P. 59 (as modified by Fed. R. Bankr. P. 9023) or a motion for relief under Fed. R. Civ. P. 60 (as modified by Fed. R. Bankr. P. 9024). *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Typically, motions filed within the limited filing period specified in Rule 9023 are treated as Rule 59 motions, while motions filed outside of that time period are considered under Rule 60. *Id.* In either event, "reconsideration" of judgments or orders after they have been entered is considered to be an "extraordinary remedy" that should be "used sparingly." *In Re Aguilar* 470 BR 606, 609 (Bankr. D.N.M 2012). As a result, the standards for post-judgment motions are quite high. As our circuit stated, Rule 59 is not appropriately used "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Likewise, Rule 60(b) "may only be granted in exceptional circumstances." *Id.* at 1009. Here, the motions were filed within the time allowed by Rule 59 (e) and will be treated as such.

The Court may only grant a motion under 59(e) where: 1) there is an intervening change in the controlling law; 2) the Court is presented with new evidence previously unavailable; or 3) there is a need to correct clear error or prevent manifest injustice. *See Id.* at 1012. Under the third prong, in order to grant a Rule 59(e) motion, a court must find a manifest error of law or fact. See *Lyons v. Jefferson Bank & Trust,* 793 F. Supp. 989, 991 (D. Colo. 1992). Additionally, the Court should act under this third prong where the court has "misapprehended the facts, a party's position,

or the controlling law." *Servants of The Paraclete,* 204 F.3d at 1012. A motion under 59(e) should not be used to revisit issues already addressed or to advance arguments that could have been raised in prior briefing or at prior hearings. *Id.* Accordingly, the Court will apply this standard to each of the claims the parties have raised for why the Court should alter or amend its findings of fact and conclusions of law.

### Black Iron's Argument for Further Reducing Conversion Damages

There are three independent reasons for why the Court will deny Black Iron's Motion. First, Black Iron contends that the Court should reduce the award of conversion damages that Wells Fargo suffered by the purported amount Wells Fargo did not incur as a cost of removing the railcars and locomotive engines; in the Court's opinion, this is a repeat of an argument which this Court was not persuaded by earlier. In Black Iron's post-trial brief, it explicitly argued that the conversion damages should be reduced for a variety of reasons including removal costs avoided by Wells Fargo. Having considered both parties' post-trial briefs, the Court calculated damages in accordance with the law. Further, the Court reduced the amount of conversions damages by the sale proceeds, something which Black Iron sought, but the Court elected not to reduce conversion damages by the avoidance of storage costs and removal costs. The Court properly determined that the measure of damages for this hypothetical forced sale was the fair market value of the Wells Fargo's equipment, and it then, as a matter of law and equity, reduced that value by the scrap value Wells Fargo was able to recover.

Black Iron is not arguing that there has been an intervening change in the controlling law, nor that there was evidence unavailable at the time of trial. There is no need to correct a clear error or prevent manifest injustice by the Court. In the Court's view, Black Iron is rearguing a matter on which the Court has made a ruling. This is not a sufficient reason for having the Court amend or

alter its decision on the amount of the conversion damages. That is more properly an issue for the appeal.

The second reason for denying Black Iron's Motion is that the only evidence that Black Iron relies on for its motion is highly speculative and does not persuade the Court that the dollar value that Black Iron seeks to reduce the judgment by is accurate and reliable. After Wells Fargo established its damages, it was Black Iron's burden to prove they should be reduced. *See Pratt v. Bd. of Ed. Of Uintah Cty. Sch. Dist.*, 564 P.2d 294, 298 (Utah 1977) ("[a]lthough plaintiff is obligated to minimize his damages, the burden is upon the party whose wrongful act caused the damages to prove anything in diminution thereof."); *see also Green v. Nelson*, 232 P.2d 776, 783 (Utah 1951) ("the burden of proving matters in mitigation or reduction of the amount of plaintiff's damages rests upon a defendant."). At trial, there was insufficient evidence admitted that would give the Court a reasonable basis to reduce Wells Fargo's damages more than it did, Black Iron simply did not meet its' burden it needed to further mitigate the conversion damages.

The sole piece of evidence that Black Iron relies upon is an e-mail chain in which Wells Fargo employees estimated the costs to move the Equipment following CML's breach. Trial Ex. 425. However, this internal e-mail appears to be nothing more than an attempt to obtain a quick and rough estimate for Wells Fargo's internal use only.  In Exhibit 425, Lilija Martinka wrote that fellow employee Cindy Roberts "reached out to 5 possible storage locations to inquire about availability" but that "[o]nly one got back to her." Because Roberts estimated the Equipment "would need to be stored at 5 different storage locations," she decided to use an "average of 900 miles to estimate the cost." Ms. Martinka confirmed that "once actual storage locations are identified and commitments are made, these numbers will be further refined." This email, which Black Iron relies on for the calculation of how much the conversion damages should be reduced

by, accordingly is too speculative to persuade the Court to alter its opinion. *See Ellsworth v. Tuttle*, 148 F. App'x 653, 668 (10th Cir. 2005), ("[j]ust as speculative damages may not be awarded, the duty to mitigate does not apply when the proposed mitigation is too speculative.").

The final reason for why the Court is denying Black Iron's Motion is there is no basis in the law which Black Iron is entitled to recover. In Utah the measure of damages for conversion "is the value of the property at the time of conversion, plus interest." *Henderson v. For-Shor Co.*, 757 P.2d 465, 468 (Utah Ct. App. 1988). The Utah Supreme Court further stated that this is because "the remedy for conversion is analogous to a forced sale of the converted property from the plaintiff to the defendant." *Mahana v. Onyx Acceptance Corp.,* 96 P.3d 893, 899 (Utah 2004).

Black Iron originally sought to reduce the conversion damages by the hypothetical storage costs that Wells Fargo would have incurred after the date of conversion. Black Iron only cited to the general proposition that conversion damages "are measured by the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong", *Henderson* at 469, for its argument on why the conversion damages should be reduced. Here, the Court properly determined that the measure of damages for this hypothetical forced sale was the fair market value of the Wells Fargo's equipment, and it then as previously stated, reduced that value by the amount that Wells Fargo was able to recover in a subsequent sale. The case law specifically says that conversion damages are calculated at the time the conversion took place which the Court believes it has done. With Black Iron withdrawing its request to reduce the conversion damages by avoided storage costs at oral argument, the Court believes this point has become moot; however, the previous two reasons for denying Black Iron's Motion are still applicable.

For these reasons, the Court denies Black Iron's Motion.

**Wells Fargo's Argument for A Lien on Black Iron's Assets**

In its Memorandum Decision, the Court's reasoning for denying Wells Fargo a lien on Black Iron's assets was that "no relief from the automatic stay was requested" and accordingly, no lien could be imposed on property of the estate. For similar reasons as previously articulated, the Court made a ruling on the matter and there is no intervening change in the controlling law, there is no new evidence that was unavailable at the time of trial, and there is no need to correct a clear error or prevent injustice by the Court. While Wells Fargo appears to argue that this was a clear error, the Court disagrees.

11 U.S.C. § 362(a)(4) provides that the filing of a voluntary bankruptcy petition "operates as a stay, applicable to all entities, of … (4) any act to create, perfect or enforce any lien against property of the estate." If a creditor wishes to seek relief from the automatic stay, it must carry its burden under section 362(d) and comply with Bankruptcy Rule 4001(a), which requires the movant to file a motion in accordance with Rule 9014 and serve the motion on certain of Black Iron's creditors, pursuant to Rules 4001(a)(1) and 1007(d). And, if Wells Fargo was to argue it is entitled to ex parte relief from stay pursuant to Rule 4001(a)(2), the it must have shown: (1) "it clearly appears from specific facts shown by affidavit or by a verified motion that immediate and irreparable injury, loss, or damage will result to the movant," and (2) file a certification from the movant's counsel explaining the efforts made to give notice and the reasons why notice should not be required. Wells Fargo did not attempt to meet its burden under Section 362(d) or make any effort to comply with 4001(a); further, Wells Fargo did not attempt to request relief from the stay, nor did it make any effort to give other creditors notice of its request or an opportunity to be heard. At a stay relief hearing, the Court typically weighs whether there is cause to lift the say which

includes a number of issues, including whether there is equity in the property sought and whether it is necessary for an effective reorganization. *See* § 362(d)(a) &(b). Wells Fargo did not was present any evidence for why it should be entitled from relief from the stay nor did Wells Fargo argue that it should be entitled to such relief. Accordingly, the Court appropriately did not grant Wells Faro a lien against property of the bankruptcy estate because the stay was still in place.

Wells Fargo believes that it would have been superfluous to seek relief from stay since it was litigating in a bankruptcy court. Wells Fargo argues that "[t]he automatic stay is a central provision of the Bankruptcy Code and prevents creditors from taking further action against the debtor except through the bankruptcy court." *In re Cashco, Inc.*, 599 B.R. 138, 146 (Bankr. D.N.M. 2019). Since this trial occurred in the United States Bankruptcy Court for the District of Utah, Wells Fargo believes it is exempt from seeking relief from the automatic stay. The Court disagrees for two rationales. First, *Cashco* dealt with issues routine in bankruptcy proceedings, such as filing proofs of claims and adversary proceedings, that would technically violate the automatic stay if Courts were to interpret the language of the statute too literally. Here, Wells Fargo obtained a judgment and seeks to attach a lien onto Black Iron's assets, something that if it were done in another court would certainly violate the stay. The Court is not ultimately convinced that Wells Fargo's interpretation of *Cashco* and other non-binding cases are applicable to the attachment of a judicial lien.

The second reason is this Court is sitting as a trial court of either the state of Utah or in the U.S. District Court and applying Utah law in this adversary proceeding. If this were simply a bankruptcy case originating here like *Cashco* and the relief from stay was something more routine like a filing of a claim or adversary proceeding, then the Court might have been more receptive to Wells Fargo's argument; however, this is not simply a bankruptcy case.   The facts in this adversary

proceeding are very unique because here, a creditor is seeking to diminish the bankruptcy estate through the use of the state fraudulent transfer laws. The Court believes that compliance with the stay provisions of the bankruptcy code are paramount and without seeking relief from stay to seek an attachment or otherwise impose a lien on property of the estate, Wells Fargo's request for an attachment fails.

Even if Wells Fargo complied with these rules, the Court has broad discretion to determine the appropriate remedy for a fraudulent transfer. As the Court previously explained in its memorandum decision:

> The UFTA is subject to common law principles of law and equity. *See* Utah Code Ann. § 25-6-11 ("Unless displaced by this chapter, the principles of law and equity . . . supplement this chapter's provisions."). The language of the UFTA states that "**a creditor . . . may obtain**" **avoidance or attachment** (Utah Code Ann. § 25-6-8(1)(a)), and that the creditor's relief is "subject to applicable principles of equity." *Id*. at (1)(c). When fashioning a remedy, the court is given leeway to provide "any other relief the circumstances may require." *Id*. at (c)(iii). "Ordinarily, when a statute provides a court 'may' do something, the statute is permissive, not mandatory, and grants the court a discretionary authority." *Renda v. Nevarez*, 167 Cal. Rptr. 3d 874, 877–78 (Cal. Ct. App. 4th Dis. 2014) (fashioning a remedy under the California UFTA, which has the same wording as the Utah UFTA).

*See* Memorandum Decision After Trial, Docket No. 591 at page 42. Wells Fargo is not entitled to a lien, it is within the sole discretion of the Court on whether to grant an attachment or not; and the Court elected not to do so.

Because there is no intervening change in the controlling law, there is no new evidence that was unavailable at the time of trial, and there is no need to correct a clear error or prevent manifest injustice by the Court, the Court denies this part of Wells Fargo's motion.

**Wells Fargo's Request for Prejudgment Interest**

While "a request for [prejudgment] interest in the complaint … is sufficient to raise the issue in the district court [at trial]" and award prejudgment interest in a final judgment. *Macsenti v. Becker*, 237 F.3d 1223, 1245 (10th Cir. 2001). While the bar for failing to plead pre-judgment

interest is low, it takes more to substantiate a claim for pre-judgment interest. Utah courts have required even less, upholding prejudgment interest awards "even absent a specific request." *Kimball v. Kimball*, 217 P.3d 733 (Utah Ct. App. 2009); *see also Fitzgerald v. Critchfield*, 744 P.2d 301, 304 (Utah Ct. App. 1987) ("failure to specifically plead a request for prejudgment interest is of no consequence because 'the interest issue is injected by law into every action for the payment of past due money'").

The issue of prejudgment interest was specifically raised in the pretrial order as a contested issue: "[i]f Plaintiffs are entitled to a money judgment against Black Iron and/or GDC, what is the appropriate prejudgment interest rate." Pre-Trial Order, Docket No. 574. Thus, the Court was incorrect when it stated that Wells Fargo had waived its claim for prejudgment interest. However, "[a] party claiming prejudgment interest must provide the [factfinder] with evidence enabling it to sufficiently measure and calculate damages." *AE Inc. v. Goodyear Tire and Rubber Co.*, 576 F.3d 1050, 1059 (10th Cir. 2009). Despite the issue being raised in the pretrial order as a contested matter, Wells Fargo did not pursue an award of prejudgment interest at trial. The language of the pretrial order is significantly important here. The pretrial order does not say that if Wells Fargo had prevailed, then it could present evidence as to what it believes is an appropriate interest rate. Rather, the pretrial order reads "if Plaintiffs are entitled to a money judgment against Black Iron and/or GDC, what is the appropriate prejudgment interest rate." The Court interprets that to mean, Wells Fargo was to provide the Court with what it believed to be an appropriate prejudgment interest rate so that the Court, if it awarded a money judgment, could calculate the appropriate damages. Wells Fargo failed to provide the Court with any interest rate regarding prejudgment interest. Thus, there is no evidence before the Court supporting Wells Fargo's claim to prejudgment interest.

This is not an issue of failing to plead, but rather a failure to pursue it at trial. See *Cf. Mason v. Western Mortg. Loan Corp.*, 754 P.2d 984, 986 n.1 (Utah Ct. App. 1988) (distinguishing between failing to request prejudgment interest in a pleading or pretrial order versus failing to request prejudgment interest at trial).  The Utah Court of Appeals in *Fitzgerald v. Critchfield*, 744 P.2d 301 (Utah Ct. App. 1987), held a party's "failure to specifically plead a request for prejudgment interest is of no consequence because 'the interest issue is injected by law into every action for the payment of past due money.'" Although Fitzgerald failed to request prejudgment interest in his original pleading, he did, contrary to the Utah Court of Appeal's findings in the *Mason* case, raise the issue at trial. In the *Mason* Case, the Utah Court of Appeals did not consider Mason's argument for prejudgment interest because he did not put forth any argument or evidence on this matter at trial.

The Court believes the facts of this case are more in line with the facts in the *Mason* case than the *Fitzgerald* case. Wells Fargo did not waive its claim for prejudgment interest by not identifying it as an issue; however, by not providing the Court with an interest rate that Wells Fargo believed it was entitled to, similar to *Mason*, the Court will not consider the issue of prejudgment interest post-trial.  In the Court's opinion, the language of the pretrial order clearly put a burden on Wells Fargo to prove "what is the appropriate prejudgment interest rate." If Wells Fargo wanted an award for prejudgment interest, then it should to have put forth evidence at trial showing what interest rate it was entitled to, which it failed to do. Accordingly, the Court denies Wells Fargo's motion as to the issue of prejudgment interest.

### Wells Fargo's Attorney Fee Claim

In the Memorandum Decision, the Court held that Wells Fargo abandoned its request for attorneys' fees. The Court made its decision based on three aspects: first there was no request for

any attorney fees in the pre-trial order, second the proposed findings of facts submitted by Wells Fargo made no mention of attorney fees, and third Wells Fargo made no argument and presented no evidence at trial as to an award for attorney fees nor did it suggest that if it were the prevailing party it would present anything on fees at a later date.  With that said, the Court did overlook an analysis of Federal Rule of Civil Procedure 54(d)(2)(b)(i) in its Memorandum Decision, which allows a party to seek attorneys' fees within "14 days after the entry of judgment." "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FRCP 54(d)(2)(A). The question of whether the Court prematurely ruled on attorneys' fees rests on the question of whether the substantive law under UFTA requires those fees to be proved at trial as an element of damages or not. If Wells Fargo did not have to prove attorneys' fees as an element of damages at trial as against Black Iron and GDC, then a post-judgment motion for attorneys' fees would have been appropriate and the Court made a premature judgment as to this issue. However, if Wells Fargo had to prove attorneys' fees as an element under damages against those defendants, then the Court was correct in finding that Wells Fargo abandoned its request for attorneys' fees.

In Utah, the general rule "is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). Wells Fargo points to the Lease Agreements between it and CML Metals as a basis for attorney fees against CML Metals. The Lease Agreements unambiguously provide that the Lease

> shall be liable for all costs, expenses and damages incurred by Lessor by reason of the occurrence of any Event of Default or exercise of Lessor's remedies with respect thereto, including, but not limited to, all reasonable attorneys' fees and costs…costs related to the repossession, storage, repair, inspection, and transportation or other disposition of the [Railroad Equipment], and all incidental and consequential damages.

16

*See* Memorandum Decision, Docket No. 591 at pages 55-56.

Black Iron argues that there was no contract between Wells Fargo and Black Iron or GDC – especially not one that provided for attorney fees. Had Wells Fargo sought attorneys' fees from Black Iron or GDC, then Wells Fargo should have included those fees as a part of the damages and have pursued them at trial since there was no statutory or contractual basis for attorneys' fees. In Wells Fargo's court papers to amend or alter the Memorandum Decision, it does not appear to be seeking attorneys' fees from Black Iron or GDC, merely against CML Metals. However, at oral argument Wells Fargo argued that the Court could impute at least some of its attorneys' fees to Black Iron and GDC because the lease agreements provide a contractual basis to do so. Accordingly, the Court will analyze whether Wells Fargo waived its claims to attorneys' fees against CML Metals only and then, whether those fees can be imputed against Black Iron and GDC.

While there was a stipulated judgment against co-defendant, CML Metals, on March 8, 2019, this action did not terminate until the final judgment was entered on August 30, 2019. Federal Rule of Civil Procedure 54(b) provides: "any order or other decision…that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." As such, any Rule 54 motion for attorneys' fees prior to the issuance of the Memorandum Decision would not have been ripe. *See Freres v. Xyngular Corp.*, 2015 WL 4613123, at 3 (D. Utah 2015). Here, Wells Fargo alleged its right to attorneys' fees in the Complaint and in its initial supplemental disclosures. While it would have been ideal to have raised the issue of attorneys' fees earlier or to have put the Court on notice about a possible Rule 54(d) motion, the Court finds that not including this claim

in the pre-trial order or mentioning it at trial did not waive the claim altogether as against CML. Accordingly, the Court will amend the judgement as to the waiver of attorneys' fees as to CML Metals.

The Court will now address the issue of whether Wells Fargo can pursue attorneys' fees against Black Iron and GDC. Generally, "attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Stewart*, 885 P.2d at 782.  There are some common law exceptions to the general rule, such as the third-party litigation rule, bad faith exception, offer of judgment exception, and others; however, none of these exceptions are applicable here. Accordingly, in order to recover its requested attorney's fees against Black Iron or GDC, Wells Fargo must demonstrate that there is either statutory or contractual authority for such an award.

First the Court will determine whether there is statutory authority under UFTA for an award of attorneys' fees. Section 25-6-9(2) of the UFTA provides that the creditor may recover "the amount necessary to satisfy the creditor's claim," which might include attorneys' fees. As stated by the Utah Court of Appeals, "[t]he statute's language never specifically refers to attorney fees, but instead only to the amount of the creditor's claim. A claim for damages under the U.F.T.A. is separate and distinct from an award of attorney fees." *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1264 (Utah Ct. App. 1996). Wells Fargo had the right to present damages in the form of attorneys' fees under UFTA at trial – which it did not pursue. By not presenting any evidence at trial as to the award for attorneys' fees under the UFTA, it prevents the Court from post-trial consideration as to this issue other than it was waived. Federal Rule of Civil Procedure 54(d)(2)(A) reads: "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Since the

issue of attorneys' fees as to Black Iron and GDC under UFTA is an element of its substantive damage claim, a post-judgment motion is not within the acceptable parameters outlined for obtaining these attorney fees.

The Parties do not necessarily dispute that there is no statutory authority for awarding attorneys' fees outside of the underlying UFTA claim; however, Wells Fargo asserts that it has the right to pursue its contractual remedies under the lease agreements it entered into with CML Metals which includes some attorneys' fees against Black Iron and GDC. Black Iron opposes this notion because it was not a party to the lease agreements that provides a contractual remedy for attorneys' fees. The Court must next determine whether there is a contractual basis for Wells Fargo to pursue attorneys' fees against Black Iron and GDC.

At oral argument, Wells Fargo argued that it could pursue attorney fees as to its contractual rights with CML Metals against Black Iron and GDC under *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d. 1252 (Utah Ct. App. 1996). In *Selvage*, the Plaintiff brought several actions, including an UFTA claim, against Sear Brown Group (herewithin "Brown") and J.J. Johnson & Associates (herewithin "Johnson"). The Plaintiff had an agreement with Johnson which included a clause about awarding attorney fees. Johnson transferred all of its assets and liabilities to Brown, and the trial court entered a judgment and attorney's fees against both Johnson and Brown – which the appellate court upheld stating "Selvage is entitled only to the attorney fees he reasonably incurred in enforcing his contractual rights." Similarly, Wells Fargo argues it is entitled to pursue attorneys' fees by way of the lease agreements it entered into with CML Metals because Selvage was awarded attorneys' fees against Brown based off a contract with Johnson. The Court is not persuaded by this argument.

19

While Wells Fargo's assertation of the facts and the holding of the *Selvage* case are accurate, the Court notes there are differentiating and distinguishing facts that are important here. In *Selvage,* Brown was the sole share-holder of Johnson. Accordingly, there was an dominate-subordinate relationship that existed between the parties where by one party (Brown) had complete control over the other party (Johnson). Here, CML Metals and Black Iron are two distinct entities, which are owned and operated by separate parties (Michael Conboy and Steve Gilbert respectfully). This is an important distinguishing fact because the Utah Court of Appeals appeared to have no issue with imputing the contract between Selvage and Johnson onto Brown – which is evidenced by the complete lack of analysis on this subject. This leads this Court to believe that Johnson's and Brown's relationship had a significant role in the Court of Appeals holding, otherwise it would have needed to explain a basis to impute an award for attorneys' fees on a third party which was not a part of the contract. Because Black Iron and CML Metals are two separate entities and not controlled by the other, the Court does not believe this is an apples to apples comparison.

The next distinguishing fact from the *Selvage* case is Johnson transferred all of its assets and liabilities by way of an asset purchase agreement to Brown. The Court does not know the exact terms of the asset purchase agreement in the Selvage case, but the Court is aware of the terms here – and the terms of the asset purchase agreement between CML Metals and GDC do not deal with whether GDC would assume the lease agreements or not. The Court found as much in its Summary Judgment decision regarding Wells Fargo's claim for conversion damages where it stated: "[t]he Leases for the Equipment were not expressly dealt with in the Asset Purchase Agreement, and the parties appear to assume that the Leases with their rights and obligations did not pass to Black Iron." Memorandum Decision/Opinion and Order, Docket No. 441. A closer look at the asset

purchase agreement (plaintiff's exhibit 183) Section 1.01(a) and the schedule to 1.01(a) confirms that the lease agreements were not among the assets which CML Metals intended to transfer to GDC – leading this Court to conclude that GDC and Black Iron were never intended to assume these leases. There is no evidence of any assumption by them either.

This finding is important because the doctrine of privity of contract provides that a contract cannot confer rights or impose obligations upon any person who is not a party to the contract. The Utah Court of Appeals defined privity as "a person so identified in interest with another that he represents the same legal right…[t]his includes a mutual or successive relationship to rights." *N.A.R., Inc. v. Vermillion*, 284 P.3d 665, 667 (Utah Ct. App. 2012). The Utah Supreme Court case of *Gables v. Castlewood-Sterling,* 417 P.3d 95 (UT 2018), is a good reminder that unless a plaintiff or defendant have contractual rights or obligations, or have been assigned such rights and obligations, it cannot maintain a cause of action when there is no privity between the parties. While *Gables* does not involve an UFTA claim, its common law message of privity of contract being important is relevant here. *See Gardiner v. York*, 153 P.3d 791, 794(Utah Ct. App. 2006) ("[U]nless displaced by [the UFTA] the principles of law and equity, including merchant law and the law relating to principal and agent, equitable subordination, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement [the UFTA's] provisions.").

Here, Wells Fargo is seeking attorneys' fees pursuant to the lease agreements it entered into with CML Metals against Black Iron and GDC. There was no contract between Wells Fargo and Black Iron or GDC. Further, the asset purchase agreement did not intend to transfer or assign the lease agreements to Black Iron or GDC nor did Black Iron and GDC appear to have assumed the lease agreements. Even if the asset purchase agreement intended to do such, the

*Gables* case makes clear that an assignment of claims required specific language that demonstrated a manifestation that the parties intended something be transferred or assigned. Words like assumes, assigns, transfers, or conveys are needed to show that CML Metals intended to transfer the rights and obligations under the lease agreements to GDC and Black Iron. Nothing in the asset purchase agreement shows any inclination that CML Metals intended to transfer its rights and obligations under the lease agreements to GDC or Black Iron. Since the Court finds no basis for an assignment, the Court finds that Wells Fargo lacks the privity of contract needed to enforce contractual obligations under the lease agreements onto GDC and or Black Iron. The Court notes that while an UFTA claim is based in tort law, an award for attorneys' fees needs to be based on statutory authorization or by way of a contract – which there is no basis for either against Black Iron and GDC. The Court elects not to impute a contractual remedy for attorneys' fees onto a third party without authority to specifically do so. Accordingly, the Court denies Wells Fargo's request to file a Federal Rule of Civil Procedure 54(d) motion for attorneys' fees against Black Iron and GDC.

In light of the Court's ruling, the Court will allow Wells Fargo 14 days to submit proposed attorneys' fees to the Court relating to its claim against CML Metals – if it chooses to do so. Additionally, the Court will give parties opposing them 14 days for the option of responding to Wells Fargo's submission. If there is a response, then the Court will set the matter for a hearing. If there is no response, then the Court reserves the right to enter an order awarding attorneys' fee.

**Conclusion:**

In Conclusion, for the reasons previously articulated, the Court denies Black Iron's Motion. Further, the Court denies Wells Fargo's Motion as to the issue of pre-judgment interest, an attachment on Black Iron's property, and the award of attorneys' fees against Black Iron and GDC.

The Court grants Wells Fargo's motion only to the extent that it may submit a motion, application

or the like seeking attorneys' fees against CML Metals.  Separate Orders accompany this Decision.

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION ON BLACK IRON, LLC'S MOTION UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 7052, 9023 & 9024 AND WELLS FARGO RAIL CORPORATION'S MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN MEMORANDUM DECISION AND TO AMEND THE JUDGMENT** shall be served to the parties and in the manner designated below.

By CM/ECF Notification:

- Troy J. Aramburu   taramburu@swlaw.com, jritchie@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com
- Ryan C. Cadwallader   rcadwallader@kmclaw.com, tsanders@kmclaw.com
- Bret R Evans   brevans@swlaw.com, jritchie@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com
- Dana T. Farmer   dfarmer@djplaw.com, mthatcher@djplaw.com;pbrimley@djplaw.com;mbeaty@djplaw.com
- Douglas Farr   dfarr@swlaw.com, docket_slc@swlaw.com;sballif@swlaw.com
- R. Blake Hamilton   bhamilton@djplaw.com, agregson@djplaw.com;mthatcher@djplaw.com;pbrimley@djplaw.com;mbeaty@djplaw.com
- Mark E. Hindley   mehindley@stoel.com, rnoss@stoel.com;slcdocket@stoel.com;Dixie.colson@stoel.com
- David J. Jordan   david.jordan@stoel.com, stacy.kamaya@stoel.com
- Penrod W. Keith   pkeith@djplaw.com, khughes@djplaw.com
- Matthew L. Lalli   mlalli@swlaw.com
- David B. Levant   david.levant@stoel.com
- Ellen E. Ostrow   ellen.ostrow@stoel.com, Stephanie.hore@stoel.com;docketclerk@stoel.com
- Brian M. Rothschild   brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- Amy F. Sorenson   asorenson@swlaw.com, smoen@swlaw.com
- Jeffrey L. Trousdale   jtrousdale@cohnekinghorn.com, mparks@cohnekinghorn.com